UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRITTANY MARIE ISKRA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Hon. Paul L. Maloney

Case No. 1:19-cv-973

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether

there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff filed an application for DIB on October 11, 2016, alleging that she had been disabled since March 16, 2016. (PageID.167.) Plaintiff claimed that she was unable to work due to Ehlers Danlos syndrome (EDS), postural orthostatic tachycardia syndrome (POTS), hypothyroidism, and fibromyalgia. (PageID.177.) Plaintiff was 26 years old at her alleged onset

date. (PageID.83.) She graduated from high school but did not have any specialized job training and had not gone to trade or vocational school. (PageID.178.) She had previous employment as a fast-food manager and as a claims clerk. (PageID.49.) Plaintiff's application was denied (PageID.95), after which she requested a hearing before an Administrative Law Judge (ALJ).

On July 18, 2018, ALJ David Read held a hearing and received testimony from Plaintiff and David Huntington, an impartial vocational expert. (PageID.55–81.) On October 25, 2018, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled from her alleged onset date through the date of the decision. (PageID.38–49.) The Appeals Council denied Plaintiff's request for review on September 13, 2019. (PageID.24–27.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on November 15, 2019.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date, the ALJ found that Plaintiff suffered from severe impairments of EDS, POTS, and status post hip surgery. (PageID.40.) The ALJ found that Plaintiff's medically-determinable impairments of degenerative disc disease, migraines, hypothyroidism, anxiety, fibromyalgia, and obesity were non-severe impairments. (PageID.40–41.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or

---

must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.42–43.)

The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), with the following restrictions:

> [S]he can lift/carry 10 pounds occasionally and less than 10 pounds frequently; standing for two hours, walking for two hours. She can occasionally reach overhead to the left and to the right. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds; and never balance. She can never work at unprotected heights. The claimant's time off task includes in addition to normal breaks, off task less than five percent of time in an eight-hour workday.

(PageID.43.) At step four, the ALJ determined that Plaintiff could perform her past relevant work as a claims clerk. (PageID.48–49.) Accordingly, the ALJ determined that Plaintiff was not disabled.

## DISCUSSION

Plaintiff sets forth three issues on appeal:

(1) The ALJ failed to properly consider the effects of Plaintiff's severe and non-severe impairments in the RFC finding.

(2) The ALJ committed reversible error by failing to explain the weight he afforded to the opinion of the Administration's own consultative examiner, Dr. Stephen Hypes, D.O.

(3) The ALJ's reasoning for discounting the lay opinion of Plaintiff's husband was not supported by substantial evidence.

### I. Failure to consider the effects of severe and non-severe impairments

Plaintiff argues that the ALJ failed to account for significant limitations relating to her diagnosed impairments of POTS, migraine headaches and fibromyalgia. RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 404.1546(c). A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also*, SSR 96-8P, 1996 WL 374184 at *1 (Social

Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ should consider all the claimant's impairments, including those that are not severe, in evaluating the claimant's RFC. *See Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (per curiam) ("[O]nce an ALJ finds that a claimant has at least one severe impairment at step two of the disability analysis, the ALJ must then 'consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe' in evaluating the claimant's ability to work in step four.") (quoting 20 C.F.R. § 404.1545(e)).

### A. POTS

The ALJ found that Plaintiff suffered from POTS, or postural orthostatic tachycardia syndrome, concluding that it was a severe impairment. POTS is a condition that affects blood flow and involves the autonomic and sympathetic nervous systems. Individuals with the condition often experience lightheadedness and fainting when standing up from a reclining position that may be relieved by sitting or lying back down. Symptoms can include, among other things, high/low blood pressure, dizziness, fainting, exhaustion, blurred vision and headaches.[2] As noted in *Ferguson v. Commissioner of Social Security*, No. 12-15080, 2014 WL 106561 (E.D. Mich. Jan. 10, 2014), POTS is difficult to diagnose and treat because "it is not easily identifiable with objective test results." *Id.* at *16. The court compared POTS to fibromyalgia because "[b]oth diagnoses are made

---

[2] https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last visited Feb. 15, 2021)

6

after many other diagnoses have been ruled out and are based on mostly subjective and self-reported symptoms." *Id.*

On September 1, 2016, cardiologist Awais Kang, D.O., administered a tilt-table test, which was suggestive of POTS. (PageID.477–78.) During the relevant period, Plaintiff regularly reported episodes of syncope (loss of consciousness) and near-syncope associated with POTS. (PageID.478, 511, 515, 557, 592.) Plaintiff also testified that her POTS symptoms worsened during her pregnancy. (PageID.65.) She said that if she stands up too quickly or stands for more than two or three minutes, she will start to feel the effects of her condition. (*Id.*) She also said that she may become dizzy just from sitting in an upright position and that stress or adrenaline can trigger it. (PageID.61, 65.) As a result, she spends 50 to 60 percent of the day lying down. (PageID.66.) Plaintiff said that most of the time she will get tunnel vision before passing out, "but it doesn't always happen that way . . . [and] it just comes before I even realize it and I'm out." (*Id.*)

The ALJ concluded that some work-related limitations were necessary to accommodate her symptoms from both her POTS and EDS:

> Due to the combined effects of the claimant's physical impairments, her residual function capacity (RFC) supports the restriction of work exertion to sedentary, since working with higher parameters may exacerbate symptomatology. Due to safety concerns, she can never climb ladders, ropes, or scaffolds; and never balance or work at unprotected heights. The claimant must also limit the remaining postural activities to occasional to prevent exacerbation of her EDS or POTS. Due to limited range of motion of her shoulders during her physical consultative her RFC limits her to occasional overhead reaching bilaterally. Finally, due to the combined effects of her physical impairments, she would be off task less than five percent of an eight-hour workday in addition to normal breaks.

(PageID.47.)

Plaintiff argues that although the ALJ recognized that she would likely pass out on the job and therefore included appropriate limitations in his RFC determination "due to safety concerns," he failed to explain why these concerns did not translate into further limitations that preclude an

7

ability to sit for the majority of the day in performing sedentary work or to remain "on task" for 95 percent of the day. (ECF No. 11 at PageID.783.) Plaintiff further argues that the ALJ failed to explain adequately why he discounted (but did not reject) Plaintiff's testimony and her reports to multiple medical providers that she experienced multiple syncopal episodes daily. (*Id.*) Plaintiff further argues that, given the nature of POTS, the ALJ improperly focused on the mostly normal examination findings and lack of objective evidence in the record supporting her claimed disabling symptoms.

The ALJ's decision shows that he fully considered the effects of Plaintiff's POTS impairment and restricted her to a range of sedentary work that accommodated the potential for her syncopal episodes by precluding work involving balancing, working at unprotected heights and climbing ladders, ropes, and scaffolds and providing that Plaintiff would be off task less than five percent of the work day, in addition to normal breaks. (PageID.43, 47.) In formulating the RFC, the ALJ did not, as Plaintiff suggests, focus solely on the lack of objective evidence and mostly normal examination findings in assessing the severity and limiting effects of Plaintiff's POTS symptoms. Rather, he considered the medical and other evidence, including Plaintiff's testimony, her reported activities of daily living, and her subjective statements in concluding that "[t]he record does not support the claimant's contentions as to the magnitude of her symptomatology and dysfunction, including her expressed level of dysfunction since her alleged onset date." (PageID.48.) *See* 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). For example, the ALJ noted that during a physical consultative examination on February 25, 2017, Plaintiff exhibited a slow, antalgic gait and needed assistance from her husband to stand and get onto the exam table, whereas during a trip to the emergency room one week earlier, Plaintiff was noted to be ambulatory and was not using an assistive device or wheelchair.

(PageID.46–47.) The ALJ similarly noted that in spite of Plaintiff's claimed need for a walker and wheelchair, with few exceptions, the record consistently showed that Plaintiff had a normal gait and could ambulate without an assistive device. (PageID.47) *See* SSR 16-3p, 2017 WL 5180304, at \*8 (Oct. 25, 2017) ("[W]e will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."). Moreover, although Plaintiff contends that the ALJ failed to fully explain his rationale, his discussion adequately complies with the requirements of SSR 96-8p. In short, Plaintiff simply wants the Court to re-weigh the evidence and reach a different conclusion, which it cannot do.

Relatedly, Plaintiff argues that the ALJ failed to give good reasons for not crediting the opinion of Plaintiff's treating physician, Dr. Jayasuriya. Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 416.927(c)(2). The ALJ must articulate good reasons for not crediting the opinion of a treating source. See *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

On August 22, 2016, Dr. Jayasuriya completed a long-term disability insurance form, in which she opined that Plaintiff could not "stay seated or in any position for long periods of time without episodes of [loss of consciousness] from POTS," and that she had been totally disabled

9

since March 2016. (PageID.475.) The ALJ gave the opinion "little weight" because "'long periods of time' is not a functionally defined time," it was not "consistent with the record as a whole or h[er] treatment records" and concerned an issue reserved to the Commissioner. (PageID.47–48.) Plaintiff argues that the ALJ failed to give good reasons for discounting the opinion because, in spite of its lack of specific functional limitations, it simply recognized the unpredictability of Plaintiff's syncopal episodes. Plaintiff further notes that the cited lack of consistency is irrelevant because the fact that Plaintiff "appeared comfortable" and denied back and joint pain and muscle weakness when Dr. Jayasuriya completed the form says nothing about Plaintiff's POTS diagnosis. (ECF No. 11 at PageID.782–83.) Even if the ALJ's second reason for discounting the opinion was in error, the ALJ's decision to give Dr. Jayasuriya's opinion less than controlling weight because it lacked a specific functional limitation was proper. *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018) (substantial evidence supported the ALJ's decision to give little weight to the opinion, in part, because it did "not actually describe any specific functional limitations that would preclude the claimant from engaging in all work activity in perpetuity"). Accordingly, this argument lacks merit.

    **B.**    **Headaches and Fibromyalgia**

Plaintiff argues that the ALJ erred in finding that her headaches and fibromyalgia were non-severe impairments, and again, by failing to include specific limitations relating to those impairments in her RFC. A "severe impairment" is defined as an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 416.922(a). Upon determining that a claimant has one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the

ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* at 244; *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Because an ALJ must consider the limiting effects of all of a claimant's impairments, SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' ... when we assess your residual functional capacity."), the proper inquiry is whether the ALJ considered all of the Plaintiff's impairments. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013). An ALJ's failure to find an additional severe impairment at step two is reversible only if the ALJ fails to "consider[ ] all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007); *see also Sheehy v. Comm'r of Soc. Sec.*, No. 1:15-cv-001, 2015 WL 6394780, at *4 (W.D. Mich. Oct. 21, 2015) (concluding that the ALJ's failure to consider the plaintiff's emotional impairments at step two was not harmless where the ALJ failed to consider the plaintiff's emotional impairments in assessing her RFC).

Although the ALJ did not specifically mention Plaintiff's headaches and fibromyalgia in his RFC analysis, he cited SSR 96-8p, noting that he was required to consider all of Plaintiff's impairments, including those that are nonsevere, in determining her RFC. (PageID.39.) The Sixth Circuit has affirmed that "an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020) (citing,

among others, *Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 WL 386152, at *4 (W.D. Mich. Feb. 2, 2016), *aff'd*, No. 16-1360, 2017 WL 4278378 (6th Cir. Jan. 30, 2017)). The ALJ also noted that in accordance with SSR 16-3p, he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (PageID.43), and reaffirmed at the conclusion of his RFC discussion that he "considered all of the claimant's complaints within the period under review" (PageID.48). Moreover, Plaintiff cites no medical opinion or other evidence indicating that the effects of these impairments necessitated a more restrictive RFC than the ALJ determined. Thus, any error was harmless. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

Accordingly, I conclude that the ALJ's RFC analysis is supported by substantial evidence and recommend that the Court reject this argument.

## II.     Failure to explain the weight assigned to Dr. Hypes's opinion

Plaintiff argues that the ALJ erred in failing to weigh the opinion of Dr. Hypes as required by 20 C.F.R. § 404.1527(c). Dr. Hypes conducted a physical consultative examination on February 25, 2017. He stated in his report that Plaintiff had "a history of Ehlers-Danlos syndrome, postural orthostatic tachycardia syndrome, hypothyroidism, and fibromyalgia," and that these impairments "contribute to joint instability, pain, tachycardia, and syncopal episodes with minimal exertion." (PageID.570.) Dr. Hypes observed that "[a]ll of these affect the patient's ability to work, take care of herself and her child in the home." (*Id.*)

While the ALJ discussed the examination findings, he did not consider Dr. Hypes's report as opinion evidence. The ALJ committed no error. The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis," physical and mental restrictions, and what the claimant can still do despite his or her impairments. 20 C.F.R. §

404.1527(a)(1). It is questionable whether Dr. Hypes's statement contains a medical opinion consistent with the foregoing definition. But even if the Court finds that the statement contains a medical opinion, nothing in the statement is inconsistent with the ALJ's RFC determination. Accordingly, any error is harmless. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (finding harmless error when an ALJ fails to follow the procedural requirements for considering medical opinions if the ALJ has made findings consistent with the opinion).

### III.    Consideration of third-party function report

In her final claim of error, Plaintiff argues that the ALJ's consideration of her husband's third-party function report was not supported by substantial evidence. This opinion qualified as an "other source" third-party statement. *See* SSR 06-03p, 2006 WL 2329939, at *2, 6 (Aug. 9, 2006); 20 C.F.R. § 404.1513(a) (providing that other sources may provide information about any issue involved in the claim). In evaluating "other source" opinions, an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted).

The ALJ stated that, while he considered the husband's statement, given the husband's relationship to Plaintiff he could not "be considered a disinterested third party whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (PageID.48.) The ALJ thus gave the statement "little weight." (*Id.*) The ALJ properly followed SSR 06-03p in declining to give Plaintiff's husband's report significant weight and adequately explained why he did so. *See Kumar v. Colvin*, No. 4:15CV-00073, 2016 WL 2745863, at *6 (May 11, 2016) (ALJ's decision to give limited weight to reports of the plaintiff's cousin and husband because they could not be considered disinterested third parties complied with SSR 06-03p). Accordingly, this argument lacks merit.

## CONCLUSION

For the reasons stated herein, I recommend that the Commissioner's decision be **affirmed.**

Dated: February 18, 2021            /s/ Sally J. Berens
                                    SALLY J. BERENS
                                    U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).